FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2017 NOV -9 P 3: 24

CLERK'S OFFICE
AT GREENBELT

BY_____

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

BENNETT BROTHERS YACHTS, INC.,

    Plaintiff,

v.

ALLAN LESSER, *et al.*,

    Defendants.

Case No.: GJH-17-1871

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

This maritime litigation follows a dispute between Plaintiff Bennett Brothers Yachts, Inc. ("Bennett Brothers" or "Plaintiff") and Defendant Allan Lesser regarding a service contract for Plaintiff to repair and refit Defendant's vessel, S/V KELLY GIRL. Now pending before the Court is Defendant's Motion to Compel Countersecurity, ECF No. 17. No hearing is necessary. Loc. R. 105.6 (D. Md. 2016). For the following reasons, Defendant's motion is granted, in part, and denied, in part.

### I. BACKGROUND

Plaintiff brought a maritime lien foreclosure action pursuant to the Commercial Instruments and Maritime Liens Act ("CIMLA"), 46 U.S.C. §§ 31301, *et seq.* against the Sailing Vessel "KELLY GIRL," *in rem*, and against Defendant, *in personam*. The parties entered into a service contract for Plaintiff to repair and refit the vessel in 2015, but, prior to completion, Defendant removed the vessel from Plaintiff's service yard on or around June 25, 2017. ECF No. 1 ¶ 18. Plaintiff alleges that Defendant failed to pay an outstanding balance of $40,225.58 for work performed by Plaintiff under the service contract. *Id.* ¶ 16. Following the Court's Order For

1

Issuance of Process In Rem (Warrant) for the Arrest of the Sailing Vessel on July 7, 2017, ECF No. 6, Defendant posted security of $70,000 and the Clerk of the Court released the vessel to Defendant's control. ECF No. 11. Defendant filed an Answer to Plaintiff's Complaint and brought counterclaims alleging breach of contract, negligence, breach of warranty, and violation of North Carolina's Unfair Trade Practices Act related to work performed under the service contract. ECF No. 14. The counterclaims allege damages in the amount of at least $251,218.41. ECF No. 14 ¶ 50. Defendant then filed the instant motion, requesting the Court to compel countersecurity in the amount of $425,000. ECF No. 17-1 at 11.[1]

## II. DISCUSSION

Federal Rule of Civil Procedure Admiralty Rule E(7) provides:

> When a person who has given security for damages in the original action asserts a counterclaim that arises from the transaction or occurrence that is the subject of the original action, a plaintiff for whose benefit the security has been given must give security for damages demanded in the counterclaim unless the court for cause shown, directs otherwise. Proceedings on the original claim must be stayed until this security is given unless the court directs otherwise.

The purpose of the counter security rule is "to place the parties on an equality as regards security." *Spriggs v. Hoffstot*, 240 F.2d 76, 79 (4th Cir. 1957) (citing *Washington-Southern Navigation Co. v. Balt. & Phila. S.S. Co.*, 263 U.S. 629, 638 (1924) (discussing Rule E(7)'s predecessor)). However, "equality of treatment does not result always in equality of amount [of countersecurity]," and it is not always necessary for the plaintiff to post countersecurity in an amount matching defendant's posted security or defendant's counterclaim. *Spriggs*, 240 F.2d at 79 ("When the rule gives the cross-libellant a right to 'security in the usual amount,' his bond need not necessarily be in the exact amount of the original libellant's bond; nor is it necessarily in

---

[1] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

the amount of the cross-claim") (internal citation omitted). Rather, the amount of the countersecurity is left to the discretion of the district court. *Id.*

As the parties note, the Eleventh and Second Circuits have elaborated on the Fourth Circuit's guidance in *Spriggs*. In *Afram Lines Inern., Inc. v. M/V Capetan Yiannis*, 905 F.2d 347 (11th Cir. 1990), the Eleventh Circuit held that the district court abused its discretion in ordering the plaintiff to post countersecurity in an amount equivalent to defendant's counterclaims. In doing so, the Eleventh Circuit set forth the following considerations guiding countersecurity determinations:

> First, the court should be reluctant to order countersecurity if the plaintiff does not, by the posting of countersecurity, seek to release its property from the counterplaintiff's custody. Second, the court should determine whether the counterplaintiff could initially have brought its claim *in rem* or *quasi in rem*. Where the counterplaintiff could not have proceeded in this manner, there seems little justification for ever requiring a larger bond on the counterclaim than is required in the original action. Additionally, the court should consider, if applicable, the plaintiff's financial ability to post countersecurity and the extent to which the counterclaim may be deemed frivolous.

*Id.* at 349–350 (internal quotation marks, citations, and parenthetical explanations omitted). Similarly, in *Results Shipping Co., Ltd. V. Ferruzzi Trading USA Inc.*, 56 F.3d 394 (2d Cir. 1995), the Second Circuit stated that courts granting countersecurity should follow two competing principals—balancing Rule E(7)'s equality objective, "which usually favors granting countersecurity when a defendant whose property has been attached asserts non-frivolous counterclaims growing out of the same transaction," while "not imposing burdensome costs on a plaintiff that might prevent it from bringing suit." *Id.* at 399–400 (citing *Titan Navigation, Inc. v. Timsco, Inc.*, 808 F.2d 400, 403–05 (5th Cir. 1987)).[2]

---

[2] The Second Circuit declined to apply *Afram* to the extent that "it meant to suggest that countersecurity is inappropriate unless the plaintiff is seeking to have released property the defendant has previously attached." *Results Shipping*, 56 F.3d at 400 n.3. Plaintiff is not seeking to release the vessel, but the Court does not deem Defendant's request for countersecurity presumptively inappropriate.

3

Additionally, the Fourth, Fifth, Eleventh, and Second Circuits all agree that a plaintiff should not be required to post countersecurity when doing so would impose burdensome costs that would require it to abandon its claims. *See Spriggs*, 240 F.2d at 78 (citing *City of Beaumont*, 8 F.2d 599 (4th Cir. 1925) ("the inability of the cross-respondent to furnish bond or security because of insolvency" was a valid justification for not requiring countersecurity)); *see also Results Shipping*, 56 F.3d at 400 ("the Rule is not intended to impose burdensome costs on a plaintiff that might prevent it from bringing suit"); *Afram*, 905 F.2d at 350 ("the court should consider, if applicable, the plaintiff's financial ability to post countersecurity"); *Titan Navigation*, 808 F.2d at 404 ("when a party is financially unable to post countersecurity, courts often dispense with the requirement of the rule").

According to Defendant, because he raises non-frivolous counterclaims, equality principals demand that Plaintiff posts countersecurity for the full amount of Defendant's counterclaims. Defendant, in his counterclaims, alleges that Plaintiff performed work without authorization, billed for work that it did not complete, and deficiently performed numerous repairs. ECF No. 14 ¶ 24. Defendant contends that his $70,000 bond over-secures Plaintiff's alleged damages by a factor of 1.74, and he is entitled to a proportionally similar countersecurity on his counterclaims. ECF No. 17-1 at 9. Plaintiff argues that it should not be required to post countersecurity because Defendant's claims are unallowable under maritime law, explicitly barred by the service contract, and frivolous and excessive compared to any actual damages Defendant could prove at trial. ECF No. 19 at 10–12. However, Plaintiff does not dispute the thrust of Defendant's counterclaims—that during Plaintiff's performance under the service contract, the repair and refit project greatly exceeded initial schedule and budget projections. *See* ECF No. 14 ¶¶ 18, 22 (alleging that the project estimate increased from $125,000-$165,000 in

4

May 2016 to "well in excess of $315,000" in July 2016 without authorization from Defendant, prompting Defendant to hire an independent project manager for the remainder of the project). Defendant's claims "are well pleaded and based on plausible if debatable legal theories," and the Court will not review in detail the merits of Plaintiff's arguments to the contrary at this time. *See Voyager Shipholding Corp. v. Hanjin Shipping Co.*, 539 F. Supp. 2d 688, 691–92 (S.D.N.Y. 2008) ("[t]hat an expert, through legal analysis, concludes that a claimant is unlikely to succeed in litigation does not indicate that the claim is frivolous").

While Defendant is entitled to countersecurity, the amount will be significantly less than requested. Plaintiff states that it is financially incapable of posting $425,000 in countersecurity, lacking sufficient cash or liquid assets. ECF No. 19-1 ¶¶ 2, 3. As a result, Plaintiff would be unable to pursue its claim if required to provide such countersecurity. *Id.* ¶ 6. Defendant has not suggested that Plaintiff can in fact post such countersecurity. Further justifying a reduced countersecurity, Defendant is in possession of the subject vessel and only alleges that Plaintiff damaged the vessel, or failed to properly perform service contract tasks, in the amount of $62,000. ECF No. 14 ¶ 43. As such, Defendant is entitled to receive countersecurity in the amount of $70,000.

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion to Compel Countersecurity, ECF No. 17, shall be granted, in part, and denied, in part. A separate Order follows.

Dated: November 9, 2017

GEORGE J. HAZEL
United States District Judge

5